

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-16-00021-CR
_____

DANIEL CASTRO GALLARDO, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 100th District Court
Carson County, Texas
Trial Court No. 5843; Honorable Stuart Messer, Presiding

January 16, 2018

## MEMORANDUM OPINION

Before CAMPBELL, and PIRTLE, and PARKER, JJ.

Appellant, Daniel Castro Gallardo, Jr., was convicted following a jury trial of possession of a controlled substance, methamphetamine, in an amount of 400 grams or more and was sentenced by the trial court to confinement for ninety-nine years.[1] On

---

[1] See TEX. HEALTH & SAFETY CODE ANN. § 481.115(f) (West 2017) (punishable by confinement for life or for a term of not more than 99 years or less than 10 years and a fine not to exceed $100,000).

appeal, Appellant asserts (1) DPS Trooper Josh Allen did not have reasonable suspicion to detain him after effectuating the purpose of the traffic stop in order to obtain consent to search his car, (2) his consent was involuntary, and (3) the trial court abused its discretion by refusing to admit into evidence the entire videotape of the traffic stop under the rule of optional completeness. We affirm.

BACKGROUND

In March 2015, an indictment was filed alleging that on November 20, 2014, Appellant intentionally or knowingly possessed a controlled substance, methamphetamine, in an amount of 400 grams or more. In December 2015, a two-day jury trial was held. The State's witnesses included Trooper Allen, Trooper Ben Dollar, and Sergeant Oscar Esqueda.

The State's evidence indicated that Appellant was driving too closely to a car in front of him on I-40 eastbound when he was stopped by Trooper Allen and Sergeant Esqueda for a traffic violation.[2] When the trooper approached, Appellant appeared nervous in voice and demeanor. The trooper also observed two large boxes that filled the rear passenger compartment of the Dodge Charger, a rental car. The trooper told Appellant that he was going to issue a warning and asked Appellant to accompany him to his patrol car. Appellant sat in the front passenger seat while Sergeant Esqueda stood outside.

When Trooper Allen reviewed the rental agreement for the car, he observed that it was rented on November 18 in Redondo Beach, California, and was scheduled to be

---

[2] *See* TEX. TRANSP. CODE ANN. § 545.062(a) (West Supp. 2017).

2

returned on November 24, four days later. Appellant indicated he was driving to Little Rock, Arkansas, a four-day round trip, but was planning to stay for four days to see his sister who was flying there to meet him. He also told the trooper that the large boxes contained vintage clothing he was transporting to his cousin's shop for resale in Little Rock.

Trooper Allen became suspicious because southern California and Little Rock were known distribution points for drugs. The car was also a rental and the time frame on the rental agreement did not coincide with Appellant's description of the intended length of the trip. While the trooper explained the nature of the traffic violation, he noticed Appellant's heartbeat was so elevated that his stomach was flinching with each beat. He found this odd because generally when detained drivers find out they are only getting a warning instead of a ticket they usually become relaxed.

Trooper Allen asked Appellant if he had been arrested before, and Appellant indicated he had been arrested for grand theft auto in California in 1992. The trooper verified that Appellant had been arrested as recently as 2012 and there were several arrests between the arrest for grand theft auto in 1992 and his most recent arrest. By hiding his record, the trooper believed Appellant was being untruthful and deceitful. He also believed the reason for Appellant's trip was improbable. Based on his knowledge and experience, he believed Appellant was making a quick trip to Little Rock to engage in a drug transaction and then turn around and return to southern California.

After the trooper gave Appellant a written warning, he returned Appellant's license and rental agreement. He then asked Appellant if he could ask a few more questions to

which Appellant agreed. He asked Appellant if he were transporting anything illegal or large amounts of cash. Appellant replied, "[n]o." Because he believed Appellant was transporting drugs across country, the trooper also asked if he would consent to a search of the rental car. Appellant replied, "[y]eah, go ahead." By this time, Trooper Dollar had also arrived. When Appellant was asked what was in the trunk, he responded that he had another box of vintage clothes, a personal bag, and more clothes.

The search revealed that the trunk contained a half-full box of clothes that the troopers described as the type of clothes one would find at low-end thrift stores. The trunk did not contain a personal bag or clothes that would fit Appellant. The two boxes in the rear passenger compartment likewise contained similar clothes. The boxes were wrinkled and appeared to have been used a number of times. The contents of the boxes made Appellant's explanation of his trip all the more suspicious to the troopers because they believed the clothes were not of the type normally found in a "vintage" clothing store and had very little value.

Trooper Dollar observed that the backside of the driver's seat appeared to have been tampered with. Inside, he discovered what was later determined to be methamphetamine wrapped in plastic packages. Appellant was placed under arrest and was given his *Miranda* rights.[3] More drugs were found in the backside of the front passenger seat and behind the side door on the passenger side. In all, the troopers recovered approximately nine pounds or 3,543.04 grams of methamphetamine. Sergeant

---

[3] *Miranda v. Arizona,* 384 U.S. 436, 467-68, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

4

Esqueda estimated that the methamphetamine had a street value of approximately $371,000.

ISSUES ONE AND TWO

Appellant contends that Trooper Allen did not have reasonable suspicion to detain him after effectuating the purpose of the traffic stop in order to obtain consent to search his car and his consent was involuntary. In as much as Appellant failed to object to the introduction of the evidence at trial based on a violation of any federal or state constitution or statute,[4] Appellant did not preserve his present complaint for appeal. *See Gibson v. State*, 726 S.W.2d 129, 131 (Tex. Crim. App. 1987) (holding "errors concerning the improper introduction of evidence under the fourth amendment were waivable lacking timely trial objection").

That said, police officers are not required to have a reasonable suspicion to ask a person for consent to search. *See Ohio v. Robinette*, 519 U.S. 33, 36-38, 117 S. Ct. 417, 136 L. Ed. 2d 347 (1996). *See also Hernandez v. State*, 190 S.W.3d 856, 862 (Tex. App.—Corpus Christi 2006, no pet.) (holding that "constitutional prohibitions against warrantless searches do not come into play when a person gives free and voluntary consent to search"). Once a traffic stop is completed, an officer may ask the occupants of the vehicle whether they possess contraband and may further request consent to search without having reasonable suspicion; if the request for consent is denied, then the officer may not detain the occupants any longer without reasonable suspicion of criminal

---

[4] *See* U.S. CONST. AMEND. IV; TEX. CONST. art. I, § 9. *See also* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005).

activity. *See Simpson v. State*, 29 S.W.3d 324, 328-29 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

Here, the record reflects that Appellant agreed to an extension of the traffic stop so that Trooper Allen could ask him additional questions and then consented to the search of his car. There is no evidence that the trooper said anything to indicate to Appellant that if he did not consent, he would not be allowed to leave, would be arrested, or would be charged with any offense. *See Powell v. State*, 5 S.W.3d 369, 378-79 (Tex. App.—Texarkana 1999, pet. ref'd)*, cert. denied*, 529 U.S. 116, 120 S. Ct. 1976, 147 L. Ed. 2d 1024 (2000). Accordingly, Appellant's first two issues are overruled.

ISSUE THREE

Appellant next asserts the trial court abused its discretion by refusing to admit the entire videotape of the traffic stop into evidence. Specifically, he asserts the trial court should have permitted the admission of his self-serving statement to Trooper Allen that he was unaware there were drugs in the car under the rule of optional completeness. *See* TEX. R. EVID. 107. We disagree.

During trial, the State offered a portion of the audio of the videotape of the traffic stop. Prior to its admission, the following exchange occurred:

COURT: And then after the Defendant has been Mirandized, the audio portion is going to be redacted out. Do you have the time stamps . . . .

STATE: Yes, Your Honor.

\* \* \*

COURT: Okay. And then do you have other objections, or other points you wish to take up?

6

DEFENSE: I would request that the portion of the statement made by the Defendant after Miranda would be allowed at this time. The State specifically asked, what did you – asked the officer, what did you do after arresting [Appellant]? He said he gave him Miranda. He gives a list of – he handcuffed him, he transported him, he took him to the barn to search the vehicle. That, in my opinion, opens the door, because I can ask the question, is there anything else that you did after arresting [Appellant]. And I believe the officer's testimony, at that point in time, would be yes, he asked him the question, and he made the denial of the knowledge of the drugs. That was part of the list of what he did after he has arrested him.

COURT: I do not find that that has opened the door. As we go through and the other evidence is elicited, I will certainly listen to any further argument you may have on that, but at this time, I am not allowing that portion of the audio to come in. Anything else?

DEFENSE: Nothing else, Your Honor.

We review a trial court's evidentiary rulings for an abuse of discretion. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)). The trial court does not abuse its discretion if the decision to admit or exclude evidence is within the zone of reasonable disagreement. *See id.* If the trial court's evidentiary decision is supported by the record and there is any theory of law that would support the ruling, it is not an abuse of discretion. *See Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

The rule of optional completeness provides, in pertinent part, as follows:

If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent. "Writing or recorded statement" includes a deposition.

TEX. R. EVID. 107.

7

"The rule of optional completeness is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter 'opened up' by the adverse party." *Bezerra v. State*, 485 S.W.3d 133, 143 (Tex. App.—Amarillo 2016, pet. ref'd), *cert. denied*, ___ U.S. ___, 1378 S. Ct. 495, 196 L. Ed. 2d 404 (2016). *See Sauceda v. State*, 129 S.W.3d 116, 123 (Tex. Crim. App. 2004) ("The plain language of Rule 107 indicates that in order to be admitted under the rule, the omitted portion of the statement must be 'on the same subject' and must be 'necessary to make it fully understood.'"). It is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing. *Bezerra*, 485 S.W.3d at 143 (citing *Walters v. State*, 247 S.W.3d 204, 217-18 (Tex. Crim. App. 2007)). It is also limited by Rule 403, which permits a trial judge to exclude otherwise relevant evidence if its unfair prejudicial effect or its likelihood of confusing the issues substantially outweighs its probative value. *Walters*, 247 S.W.3d at 218. *See* TEX. R. EVID. 403.

Here, Appellant sought the admission of a self-serving, hearsay statement. Hearsay statements are generally not admissible unless the statement falls within a recognized exception to the hearsay rule. *See* TEX. R. EVID. 802. Rule 107 of the Texas Rules of Evidence, the rule of optional completeness, is one such exception. *Bezerra,* 485 S.W.3d at 142 (citing *Mick v. State*, 256 S.W.3d 828, 831 (Tex. App.—Texarkana 2008, no pet.)). Further, "'self-serving declarations of the accused are ordinarily inadmissible in his behalf, unless they come under some exception, such as: being part of the res gestae of the offense or arrest, or part of the statement or conversation previously proved by the State, or being necessary to explain or contradict acts or

declarations first offered by the State.'" *Ziolkowski v. State*, 223 S.W.3d 640, 650 (Tex. App.—Texarkana 2007, pet. ref'd) (quoting *Singletary v. State*, 509 S.W.2d 572, 576 (Tex. Crim. App. 1974)). Appellant does not assert his statement was part of the *res gestae* of the offense or arrest, and it was not part of a conversation previously proved by the State. After Appellant received his *Miranda* rights, the remainder of the audio of the videotape was not played.

Appellant asserts the self-serving statement should have been admitted to explain "other evidence" so the jury was not left with a false impression concerning (1) the nature of the traffic stop or (2) whether Appellant was aware there were drugs in his rental car. In so doing, Appellant seeks to rebut evidence—not explain it. While his self-serving statement may have been at odds with what the videotape depicted, "evidence does not become admissible under the rule of optional completeness simply because it may lead to a different conclusion than other, admitted evidence." *Acker v. State*, No. AP-74,109, 2003 Tex. Crim. App. LEXIS 1034, at *14 (Tex. Crim. App. Nov. 26, 2003) (citing *Allridge v. State*, 782 S.W.2d 146, 153 (Tex. Crim. App. 1988). Further, the record below does little, if anything, to identify any potential jury confusion that might result from only playing a part of the audio portion of the videotape or any other reason the jury might reach a false impression without viewing and hearing the entire videotape, including Appellant's hearsay statement. *See Hernandez v. State*, 528 S.W.3d 229, 233-34 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

We conclude the trial court did not abuse its discretion in denying Appellant's Rule 107 request to admit the entire videotape of the traffic stop including his self-serving

statement.  *See* T<small>EX</small>. R. E<small>VID</small>. 107; *Sauceda*, 129 S.W.3d at 123-24.  We overrule Appellant's third issue.

C<small>ONCLUSION</small>

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.